JUDICIAL WATCH, INC., Plaintiff,

v.

UNITED STATES DEPARTMENT
OF COMMERCE, Defendant.

Civ.A. No. 95–0133(RCL)(JMF).

United States District Court,
District of Columbia.

July 6, 2001.

Paul J. Orfanedes, Klayman & Associates, PC, Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

Marina Utgoff Braswell, William Mark Nebeker, U.S. Attorney's Office, John Christopher Keeney, Jr., Hogan & Hartson, L.L.P., Washington, DC, Brian A. Sun, O'Neill, Lysaght & Sunn LLP, Santa Monica, CA, Jed Lloyd Babbin, O'Connor & Hannan, L.L.P., Anthony John Trenga, Miller & Chevalier, Chartered, Bruce R. Hegyi, Brian William Shaughnessy, Shaughnessy, Borowski & Gagner, Ellyn R. Weiss, Foley, Hoag & Eliot, William C. Oldaker, Oldaker & Harris, LLP, Robert Kenly Webster, Karen Kathleen Richardson, U.S. Department of Justice, Anne L. Weismann, Carol Federighi, U.S. Department of Justice, Civil Division, Reid Henry Weingarten, William T. Hassler, Brian M. Heberlig, Steptoe & Johnson, L.L.P., Stuart Henry Newberger, Crowell & Moring, L.L.P., Washington, DC, Judah Best, Debevoise & Plimpton, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

FACCIOLA, United States Magistrate Judge.

The Department of Commerce ("DOC") has moved to prevent the plaintiff, Judicial Watch, from seeing certain documents created by DOC officials in preparing the ultimate DOC response to a declaration submitted by Judicial Watch from a former DOC official, Sonya Stewart ("Stewart"). Stewart charged DOC misconduct during the Freedom of Information Act ("FOIA") search which the DOC conducted in response to Judicial Watch's request for information concerning trade missions conducted by that agency. The DOC also challenges the manner in which I have handled the assertion of the attorney-client privilege during one deposition. Finally, the DOC insists that I should preclude any discovery of information pertaining to the second FOIA search which the DOC conducted after Judge Lamberth found that the DOC's first FOIA search was insufficient and tainted by misconduct.

The first part of this memorandum deals with the DOC claim that the documents pertaining to a declaration ultimately submitted by a DOC official, Brenda Dolan ("Dolan"), are privileged from disclosure by the work product privilege. The second part deals with the attorney-client privilege problem and the third with the DOC claim that any inquiry into the second FOIA search is forbidden.

### I. FACTUAL AND PROCEDURAL HISTORY

In a prior determination in this case, Judge Lamberth found that strong evidence suggested misconduct by DOC officials in how they handled Judicial Watch's initial FOIA request, including the destruction, removal, and withholding of responsive documents. Judge Lamberth stated:

[o]n many occasions, the DOC appears to have engaged in the illegal withholding of responsive documents, in the removal of such documents from the DOC, and in the destruction of potentially responsive documents in the office of the late Secretary

Brown and elsewhere, as well as a great deal of misconduct during the litigation ... *Memorandum Opinion and Order,* Dec. 22, 1999, at 33.

Judge Lamberth concluded that, given the extent of the evidence of DOC misconduct, summary judgment against the DOC would be insufficient because it would do nothing to provide Judicial Watch with the information contained in the documents that the DOC had apparently removed and destroyed. *Judicial Watch v. United States Dep't of Commerce,* 34 F.Supp.2d 28, 42–44 (D.D.C.1998). Any full remedy for Judicial Watch therefore had to ensure that, to the extent possible, DOC misconduct was remedied by tracking down who was responsible for destroying or otherwise discarding documents, where such documents might be located, and how the information might be recovered. Judge Lamberth ordered further discovery focused on "the extent to which the DOC has illegally destroyed and discarded responsive information, and possible methods for recovering whatever responsive information still exists outside of the DOC's possession" because this was necessary to provide both full relief to Judicial Watch and an expeditious end to this litigation for the government. *Id.* at 41. The restriction on this discovery is that it must be "reasonably aimed ... at identifying instances of unlawful destruction and removal of documents by the DOC." *Id.* at 48. Judge Lamberth entrusted the supervision of this discovery to me. *Id.*

On January 7, 2000, Sonya Stewart, a DOC official in charge of handling FOIA requests made to the DOC, filed a declaration with this Court in which she alleged severe misconduct by DOC employees in their handling of Judicial Watch's FOIA request. Memorandum of Points and Authorities in Support of Defendant's Motion for Protective Order ("Def.Mem."), Feb. 22, 2001, Exhibit ("Ex.") A, Stewart Declaration. The declaration particularly alleged that Ms. Means, and other attorneys for the Office of General Counsel ("OGC"), knowingly withheld responsive documents and worked to obstruct Judicial

Watch's FOIA request. Def. Mem., Ex. A., Stewart Decl. ¶¶ 4, 6. After reviewing Ms. Stewart's declaration, Judge Lamberth granted Judicial Watch leave to depose certain DOC officials, including Brenda Dolan, an employee of the DOC, who worked under Stewart handling FOIA requests. *Order* of Dec. 5.2000, at 3.

Dolan would ultimately file a declaration in this case, challenging Stewart's declaration. *See* Def. Mem, Ex. B, Dolan Decl. Judicial Watch deposed Dolan on January 24, 2001 and I presided.

At her deposition, Dolan testified that she possessed two drafts of the declaration Ms. Dolan made in preparation of the declaration she would ultimately file in this case, as well as notes that she had made in preparation of that ultimate declaration.

The first draft of Dolan's declaration was prepared for Ms. Dolan by the DOC's OGC and is labeled "Doc # 2". Dolan Dep. at 115–16.[1] Judith Means and Sarah Coe from the OGC gave the draft to Dolan. Dolan Dep. at 116.

The second draft of Dolan's declaration was written by Dolan herself after conferring with Marina Braswell ("Braswell"), the Assistant United States Attorney assigned to defend the DOC in this case, and is close to the final declaration Dolan filed in this case. Dolan Dep. at 117. Dolan believed it was a conflict of interest for DOC attorneys to draft the declaration. Dolan Dep. at 106–107. Even though Braswell advised her that it was not a conflict of interest, Dolan was not comfortable using the draft given her by Means and Coe, so Dolan prepared one herself. Dolan Dep. at 106. Document # 3 is a draft of the declaration Dolan wrote herself. Nevertheless, this particular draft may contain portions that were drafted by the OGC originally which Ms. Dolan decided to adopt and make part of the declaration she ultimately filed. Dolan Dep. at 119. Dolan did not indicate, however, how one could segregate what she wrote herself and what she adopted from the OGC draft.

---

1. This document bears some handwritten interlineations which were made by Ms. Dolan. Do-

lan Dep. at 116.

The third document, labeled "Doc # 5", consists of handwritten notes Dolan made while drafting her own declaration to avoid signing the draft that had been prepared by the OGC. Dolan Dep. at 117–119. Dolan's deposition also revealed that Dolan possessed a fax copy coversheet and copies of a few pages of a log that was kept in the course of the court-ordered second FOIA search (labeled Doc. # 6). Dolan Dep. at 118.

During Dolan's deposition, Judicial Watch requested the disclosure of all four of these documents (Docs # 2, # 3, # 5 & # 6). The DOC objected on the grounds that the draft declarations and Dolan's handwritten notes (Doc. # 2, # 3, and # 5) are protected attorney work-product. Dolan Dep. at 110, 120. The DOC objected to producing the fax cover sheet and the log for the court ordered second FOIA search (Doc. # 6) on the grounds that the documents was "outside the scope of permissible discovery." Dolan Dep. at 121. I granted leave for the DOC to brief these issues and for Judicial Watch to respond.[2] Id. at 126–128. The parties have briefed these issues and they are ripe for resolution.

## II. THE WORK–PRODUCT PRIVILEGE

 In *Hickman v. Taylor*, 329 U.S. 495, 508–12, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the Supreme Court recognized that the work-product of an attorney should be protected in order to prevent discovery from infringing upon the integrity of the adversary process by excessive interference with the thought process of attorneys involved in the litigation. *See id.*, at 508–12. *Hickman* led to the promulgation of Fed.R.Civ.P. 26(b)(3) which provides, in pertinent part:

[A] party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of

his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).

One must first question whether the documents at issue, Documents # 2, # 3 & # 5, even fall within the rule. The materials protected must be prepared "for trial or in anticipation of litigation." This litigation is ongoing and not anticipated. More to the point, there will be no trial in this case and the parties are not conducting discovery to prepare their case for trial. Instead, Judge Lamberth has granted Judicial Watch the specific authority to conduct an inquiry into whether there were instances of unlawful destruction and removal of documents that should have been surrendered to Judicial Watch. The preparation of declarations by DOC officials in response to Stewart's assertions of their improper behavior cast an important light on what those officials claim they did during the FOIA search. Their recounting of what happened in that search, challenging Stewart's recollection, is the very matter which Judicial Watch is entitled to explore. In what can only truly be described as an inquest, the concerns for the integrity of the trial adversarial process are simply not present in the same way as they are when, as in *Hickman*, one lawyer seeks the notes of opposing counsel taken during witness interviews. If the declarations drafted by DOC officials are to be deemed "work product" during the inquest Judicial Watch is permitted to conduct, then there is shielded from inquiry documents which contain the very recollections by those officials of their role and work in the FOIA search. If such documents are privileged, then the inquiry Judge Lamberth ordered is frustrated in the most obvious way. *Cf. SEC v. National Student*

---

**2.** At Judicial Watch's request, I also ordered the DOC to address, in its brief, why it should not turn over all documents relating to the preparation of these drafts that are retained by the general counsel's office as well. *Id.* at 128. DOC has since advised me that it has no such documents. Def. Mem. at 8 n. 1.

*Marketing Corp.,* 18 Fed. R. Serv.2d 1302 (D.D.C.1974) (refusing to apply work product privilege when activities of counsel are directly in issue).

Furthermore, an examination of the documents themselves suggests, at least as to the documents Dolan created, there is absolutely no risk that a lawyer's mental processes will thereby be disclosed. First, I have examined Dolan's handwritten notes and I do not see how they disclose in any way any lawyer's mental processes. Second, Dolan prepared her own declaration because of her disinclination to sign the one the OGC had prepared. Obviously, since Dolan prepared it, it is impossible for this draft to reflect any one's mental processes other than her own. While the rule unquestionably protects a document prepared by a party for trial, that protection flows from a judicial desire to permit the lawyer for that party to prepare her case for trial in peace and to prevent her opponent from seeing what the party prepared for the lawyer's use as a potential reflection of the lawyer's thinking and trial strategy. · If the party does something for the lawyer at the lawyer's direction, learning what the party did might very well disclose the lawyer's mental processes. But, Dolan prepared her declaration because she did not want to use the OGC draft. It is, to put it mildly, counter intuitive to protect as an attorney work product a declaration prepared by a lay person because of that person's dissatisfaction with a lawyer's work product. Learning what Dolan thought should be in her declaration does not disclose what OGC thought should be in it.

A stronger case for work production can be made for Document # 2, the draft prepared by the OGC. A draft of a declaration to be executed by a party or witness denotes what a lawyer thinks that party or witness should say and thereby exposes that lawyer's mental processes. But, unfortunately for the DOC, Judge Lamberth has already found that the behavior of some of the lawyers in the OGC during the FOIA was inappropriate. Therefore, inquiry into what OGC lawyers involved in the first FOIA thought Dolan should say in response to Stewart's allegations of improper behavior of the OGC's law-

yers is central to Judicial Watch's legitimate inquiry into what the lawyers in the OGC involved in this case did or did not do during the FOIA search. Again, I find that protecting as privileged what the OGC suggested Dolan say is to protect from disclosure exactly what Judge Lamberth said should be explored.

I reach the same conclusion using a more traditional approach by assuming that, despite what I have just said, the documents are subject to work product protection. Building on the decision in *Hickman,* Fed. R.Civ.P. 26(b)(3) creates a two tiered work product privilege:

> The seminal case for the modern work product privilege is *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In *Hickman* the Supreme Court read into the Federal Rules of Civil Procedure then in effect a two-tiered protection from discovery for attorney work product, in order to accommodate the liberal deposition-discovery policies of the Rules and the need to provide confidentiality for attorneys' files. To the extent that work product contains relevant, nonprivileged facts, the *Hickman* doctrine merely shifts the standard presumption in favor of discovery and requires the party seeking discovery to show "adequate reasons" why the work product should be subject to discovery. However, to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification.

*In re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir.1982).

As I have just explained, Dolan's draft and her notes do not directly reflect the thought processes of any attorney. While the distinction between facts and theory is slippery, Dolan's own thoughts as to how to respond to Stewart fall comfortably on the "facts" side of the line.

The OGC's draft, and the comparison between it and Dolan's draft, drift closer to the "theory" side of the line. As I have acknowledged, knowing what the lawyers in the OGC thought Dolan should say exposes those law-

yer's thought processes, and the concerned OGC lawyers were involved in the representation of the DOC in the FOIA action. But, unlike the attorney-client privilege, the work product privilege yields to an opponent's showing of need, albeit extraordinary. Here, Judicial Watch makes that showing easily. As I have explained, Judge Lamberth has excoriated the conduct of the OGC lawyers in this case and has singled out Means for particular criticism. *Memorandum Opinion* of Dec. 22, 1998, at 20 (stating that Means's failure to reveal existence of minority donor list "among the most egregious abuses that have occurred in this litigation...."). Exploration of what the OGC and, in particular, Means, thought was an appropriate response to Stewart's claims of Means' misbehavior is the very exploration Judge Lamberth insisted be conducted. *Id.* at 21. (authorizing discovery to determine who was responsible for DOC's efforts to thwart FOIA and circumvent court orders). The necessity of completing that discovery easily satisfies the obligation of establishing the extraordinary justification which forces the work product privilege to yield. Moreover, if, as seems certain, a lawyer from the OGC, or Means herself, were to be asked what OGC put in the draft the OGC prepared for Dolan, the DOC would again claim a work product privilege. There is therefore no practical way to find out that information in any other way and certainly no substantial equivalent to it. I therefore conclude that the privilege claimed must yield and that Judicial Watch may retrieve from me the documents given to me during the Dolan deposition.

### III. THE ATTORNEY–CLIENT PRIVILEGE

■ At one point in her deposition, Dolan testified that Means called her and invited her to Means's office. According to Dolan's testimony, when Dolan arrived, Means asked her whether she was aware of Stewart's declaration. Dolan indicated that she was and Means gave her a copy of the Stewart declaration. Dolan, who was asked during this meeting whether she would "do a declaration", was then asked, "And what did Ms. Means tell you about the declaration." The DOC objected to the question, and I ulti-

mately overruled the objection and ordered Dolan to answer.

DOC takes me to task for overruling the objection "before first ascertaining whether that communication would reveal a confidential communication by the client." Def. Mem. at 10. The point is well taken. In the future, when an objection is premised on the attorney client privilege, I will conduct a *voir dire* on the record or, if necessary, *in camera* to ascertain whether the privilege is properly invoked. If I determine that the privilege has not been properly invoked, or that it has been waived, I will direct the witness to answer. The witness may then decline to answer the question, and I will hold the witness in contempt but stay the imposition of any sanction pending timely appeal of my determination by Judge Lamberth. This will prevent a witness from having to forfeit DOC's right to a review by Judge Lamberth of any privilege ruling I make and conform the practice as to attorney client privilege claims to those we have used when the Fifth Amendment privilege has been claimed.

### IV. DISCOVERY AS TO THE SECOND FOIA SEARCH

■ During the course of her deposition, Dolan was asked whether she and Stewart discussed whether a second FOIA search should be done differently from the first so that the second search would have the integrity the first lacked. Dolan said she had such discussions. Dolan Dep. at 173. Dolan was then asked whether one of the ways to conduct the second search with "greater integrity" was to make sure that the OGC, two of whose lawyers had been found to have engaged in misconduct, was not the ultimate arbiter of what should be produced in the second search. Dolan Dep. at 173–174. The question drew the objection of relevance. The DOC drew my attention to Footnote 2 in Judge Lamberth's opinion of December 5, 2000, which states:

> The court leaves to the side for the time being the plaintiff's interest in investigating misconduct in relation to the second FOIA search. Although Ms. Stewart's declaration does make a few references to

misconduct in the second search, that issue is better left for another day when the court has the benefit of a full briefing by both parties.

*Order* of December 5, 2000, at 4 n. 2.

During the deposition, I said of the DOC objection:

> If, for example, what we just got into seems to make the point, as I understand it, if the problem with the first search was the involvement of the general counsel's in delay of these documents and so forth. The fact that in the second search, a different mechanism was used says something about what the Department of Commerce really believed about the first one, doesn't it.

Dolan Dep. at 176.

The DOC now demands that I issue an order prohibiting any inquiry whatsoever into the second search, lest the restriction Judge Lamberth imposed in the footnote disappear.

First, I read the footnote to prohibit general inquiry into the particulars of the conduct of the second search until Judge Lamberth decides such an inquiry is appropriate. I persist in my view, however, that asking how a given aspect of the second search differed from the first may cast sufficient light on the integrity of the first and that Judicial Watch has to be permitted to ask it. The question at issue is a perfect example of what I mean. If the question had been answered in the affirmative by Dolan, Judicial Watch would have secured a perfectly appropriate concession that the DOC had not made the OGC the ultimate arbiter of the second search. From that information, Judicial Watch could argue that the DOC thereby conceded that the OGC's involvement in the first search tainted the first search's integrity. While Judge Lamberth can or cannot draw that inference as he sees fit, the crucial point is that securing information from an opponent on which to build a factual inference is the very heart of the fact finding exercise Judge Lamberth has authorized. The question was therefore directly relevant in the truest sense to the integrity of the first search.

■ The DOC also objects to my overruling its objection to the production of a document which Dolan described as follows:

> Dolan: And the next document is copy—is a fax copy cover sheet and copies of a log that was kept for a court-ordered second wide search or portions of is.
>
> Judge Facciola: Tell us about how that document came into existence?
>
> Dolan: When we were doing the document—the Department-wide search, when documents were turned over to the document production room, we were ordered to Bates stamp and log the documents and this is just an example-a few example sheets-of how we conducted our Bates stamping and logging.
>
> Judge Facciola: Now is that number 6? Are we finished?
>
> Dolan: Yes.

Dolan Dep. at 118.

After hearing the argument by counsel, I stated:

> As to number 6 document, as to which an objection of relevancy is made, I overrule that objection and I will permit Mr. Klayman to have that.
>
> Now, Ms. Braswell, if you wish to preserve your position and wish me to stay that so you can see[k] review of my decision by Judge Lamberth, please say so.
>
> Ms. Braswell: Absolutely, Your Honor.
>
> Judge Facciola: All right, so be it.
>
> Ms. Braswell: Thank you.
>
> Judge Facciola: All right. Then, obviously, Dolan is going to have to come back.
>
> Braswell: If, in fact, that ruling is upheld, yes.
>
> Judge Facciola: Well, in light of that, Braswell, as to your remaining claim of privilege, all right, I will permit you an opportunity by Mr. Klayman to respond.
>
> Braswell: Okay.

Dolan Dep. at 126–127.

As this dialogue makes clear, I intended that my ruling on the relevancy objection to the production of Document # 6 to be final in the sense that there would be no further briefing on that issue. Instead, I intended to

stay my ruling on the relevancy objection to Document # 6 pending an appeal to Judge Lamberth and his ruling. On the other hand, I intended the parties to brief the privilege objection to all the other documents before I ruled. The DOC, however, never appealed my overruling of its objection to the relevancy of Document # 6 to Judge Lamberth. I agree with Judicial Watch that, since the DOC did not, it waived any right to resist surrendering the log to Judicial Watch. Since I imposed the stay upon my relevancy ruling to permit DOC to appeal to Judge Lamberth, and DOC never perfected that appeal, I will dissolve that stay and permit Judicial Watch to have Document # 6.

I also must decline DOC's invitation to promulgate broad, protective orders defining abstractly what are and what are not proper inquiries as to the second FOIA search. If I have learned nothing else from presiding over these depositions, I have learned that I must rule on each question in the context in which it is asked. Broad, lapidary definitions of what is and what is not relevant just do not work. I will remain sensitive to DOC's objections to any inquiry into the second search, but will have to rule on them on a question by question basis.

Accordingly, it is hereby **ORDERED** that Defendant's Motion for a Protective Order [# 742] is **denied**. The Plaintiff should retrieve from the Court the draft declarations, notes, and log unless DOC appeals this decision to Judge Lamberth within the next ten days.

**SO ORDERED.**