JUDICIAL WATCH, INC., Plaintiff,

v.

UNITED STATES DEPARTMENT
OF COMMERCE, Defendant.

No. CIV.A. 95–0133(RCL).

United States District Court,
District of Columbia.

Nov. 16, 2001.

Paul J. Orfanedes, Klayman & Associates, PC, Larry Elliot Klayman, Washington, DC, for Plaintiff.

Marina Utgoff Braswell, William Mark Nebeker, U.S. Attorney's Office, Washington, DC, for Defendant.

John Christopher Keeney, Jr., Hogan & Hartson, L.L.P., Washington, DC, Brian A. Sun, O'Neill, Lysaght & Sunn LLP, Santa Monica, CA, Jed Lloyd Babbin, O'Connor & Hannan, L.L.P., Washington, DC, Anthony John Trenga, Miller & Chevalier, Chartered, Washington, DC, Brian William Shaughnessy, Shaughnessy, Borowski & Gagner, Washington, DC, Ellyn

R. Weiss, Foley, Hoag & Eliot, Washington, DC, William C. Oldaker, Okdaker & Harris, LLP, Washington, DC, Robert Kenly Webster, Washington, DC, Karen Kathleen Richardson, U.S. Department of Justice, Washington, DC, Anne L. Weismann, U.S. Department of Justice Civil Division, Washington, DC, Judah Best, DeBevoise & Plimpton, New York City, Reid Henry Weingarten, William T. Hassler, Brian M. Heberlig, Steptoe & Johnson, L.L.P., Washington, DC, for Non Parties.

Stuart Henry Newberger, Crowell & Moring, L.L.P., Washington, DC, for Movant.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on Defendant's Motion for Reconsideration of the Magistrate Judge's Decision on Defendant's Motion For a Protective Order [791]. Specifically, the defendant in this case, the United States Department of Commerce ("DOC"), seeks review of Magistrate Judge Facciola's determinations that: (1) certain documents prepared by DOC officials are discoverable by the plaintiff, Judicial Watch, and (2) that a protective order prohibiting all inquiries by the plaintiff into the second FOIA search is not warranted. After a thorough review of the parties' memoranda, the extensive record in this case, and the applicable law, the Court concludes that the defendant's motion should be DENIED.

## I. BACKGROUND

What began as an ordinary Freedom of Information Act request has snowballed into a seven-year court battle in which both the parties and the Court are still looking for the light at the end of the tunnel. As observed in an earlier opinion by this Court, Judicial Watch first sought information from the DOC on September 12, 1994. The DOC failed to provide Judicial Watch with any documents, however, until after the Court ordered the costs of production waived and the relevant documents produced. Unsatisfied with this initial production of documents, Judicial Watch sought an order from this Court directing the DOC to release more documents. The DOC, on the other hand, attempted to dispose of the case by moving for summary judgment. On February 1, 1996, the Court not only denied the DOC's motion for summary judgment, but also ordered discovery on the issue of the adequacy of the DOC's search for documents.

After minimal discovery on the adequacy of the search, it became clear that the DOC had improperly destroyed and removed many responsive documents from its custody. In an unprecedented move, the DOC filed a motion for summary judgment *against itself.* The Court subsequently denied this motion, however, because it did not adequately address Judicial Watch's claims regarding documents that had been destroyed or removed from the DOC's custody. *Judicial Watch v. United States Dep't of Commerce,* 34 F.Supp.2d 28, 42 (D.D.C.1998). At the same time, the Court ordered the DOC to conduct a second search for the requested documents and permitted Judicial Watch further discovery of information related to the destruction or removal of documents after the FOIA request was filed. *Id.*

On July 11, 2000, while continuing its discovery into the DOC's possible frustration of its FOIA request, Judicial Watch filed a motion for leave to depose persons identified in the declaration of Sonya Stewart. Stewart, the former chief of FOIA operations at the DOC, asserted in her declaration that the DOC and other government officials participated in a scheme to avoid the production of documents in both the first and second FOIA searches. The declaration specifically alleged that

Judith Means, and other attorneys working for the Office of General Counsel ("OGC"), knowingly withheld responsive documents from Judicial Watch and worked to obstruct the organization's FOIA request. In a December 5, 2000 memorandum and order, this Court granted Judicial Watch leave to depose 12 of the 25 individuals named in its motion. The Court explicitly found that sufficient evidence had been presented to suggest that those 12 individuals possessed information relevant to the alleged misconduct. Among the 12 individuals the Court allowed Judicial Watch to depose were Judith Means, an attorney for the DOC, and Brenda Dolan, an employee of the DOC who worked under Stewart handling FOIA requests.

On January 24, 2001, Judicial Watch deposed Brenda Dolan in the presence of Judge Facciola. Prior to the deposition, Dolan filed a declaration with the court disputing the facts asserted in Stewart's declaration. Moreover, during her deposition, Dolan testified that she possessed two separate drafts of the declaration she ultimately submitted to the court, in addition to notes that she had made in preparation of the final version. Whether these documents are discoverable is the primary issue for the Court to resolve in this motion.

As Judge Facciola explained in his opinion denying the defendant's motion for a protective order, the first draft of Dolan's declaration was prepared for Ms. Dolan by the OGC and is labeled "Doc # 2." According to Dolan, Judith Means and Sarah Coe, another OGC official, provided her with the document. Because of the alleged misconduct by the DOC in this case, and the OGC in particular, Dolan believed that it was a conflict of interest for DOC attorneys to draft her declaration. Even though Marina Braswell, the Assistant United States Attorney assigned to defend the DOC in this case, told Dolan that there

was no conflict, she still was not comfortable using the declaration that Means and Coe had given her. Thus, after conferring with Braswell, Dolan decided to prepare a second draft of the declaration herself. This draft of the declaration, which is close to the final version, is labeled "Doc # 3." While Dolan wrote this draft herself, it may nevertheless contain portions of the one originally prepared by the OGC. The third document, labeled "Doc # 5," consists of two pages of handwritten notes Dolan made while attempting to draft her own declaration. In addition to these documents, Dolan's deposition revealed that she possessed a fax copy coversheet and copies of a few pages of a log that the DOC kept in the course of the court-ordered second FOIA search. These materials have been labeled "Doc # 6."

During the Dolan deposition, Judicial Watch requested that all four of these documents be disclosed. The DOC objected to the production of the documents, however, on the grounds that Docs # 2, # 3, and # 5 are protected by the work product privilege and that Doc # 6 is outside the scope of discovery allowed in this case. The DOC further requested an order from Judge Facciola prohibiting Judicial Watch from making any inquiries into the second FOIA search.

Judge Facciola first addressed the DOC's claims of work product privilege. In rejecting the DOC's assertion of the privilege, Judge Facciola appears to have found two independent reasons why Docs # 2, # 3, and # 5 are not protected by the doctrine. First, Judge Facciola determined that the documents do not fall within the ambit of the work product privilege because they were not prepared for trial or in anticipation of litigation. He found that in the instant case, the litigation is ongoing and not anticipated, and that in the end there will not be a trial.

Thus, according to Judge Facciola, the documents at issue were not created in preparation of trial or in anticipation of litigation. Instead, these documents were prepared in response to Stewart's assertions that DOC officials had improperly removed or even destroyed documents that should have been provided to Judicial Watch. Judge Facciola determined that such information is of the very sort Judicial Watch is entitled to explore pursuant to this Court's orders authorizing discovery. Judge Facciola then concluded that, "[i]f the declarations drafted by DOC officials are to be deemed 'work product' during the inquest Judicial Watch is permitted to conduct, then there is shielded from inquiry documents which contain the very recollections by those officials of their role and work in the FOIA search. If such documents are privileged, then the inquiry Judge Lamberth ordered is frustrated in the most obvious way." *Judicial Watch v. United States Dep't of Commerce*, 201 F.R.D. 265, 268 (D.D.C.2001). In support of this conclusion, Judge Facciola noted that he had examined the relevant documents and did not find anything contained therein that would reveal a lawyer's mental processes. He also observed that, with respect to the draft that Dolan prepared herself, it would be counter intuitive to protect as an attorney work product a declaration prepared by a lay person because of that person's dissatisfaction with the lawyer's work product.

The second reason why Judge Facciola determined that Docs # 2, # 3, and # 5 are not protected by the work product privilege, and are thus discoverable, is because Judicial Watch has made a sufficient showing of need for the materials. Judge Facciola recognized that, unlike the attorney client privilege, the work product privilege is not absolute. Rather, the party seeking access to the purportedly privileged documents can, upon a showing of substantial need if the materials would reveal non-privileged facts or extraordinary justification if the materials would reveal the mental processes of counsel, obtain access to the information. In this case, Judge Facciola determined that Judicial Watch had "easily" made that showing. In reaching this conclusion, he found that:

> [e]xploration of what the OGC and, in particular, Means, thought was an appropriate response to Stewart's claims of Means' misbehavior is the very exploration Judge Lamberth insisted be conducted. The necessity of completing that discovery easily satisfies the obligation of establishing the extraordinary justification which forces the work product privilege to yield. Moreover, if, as seems certain, a lawyer from the OGC, or Means herself, were to be asked what OGC put in the draft the OGC prepared for Dolan, the DOC would again claim a work product privilege. There is therefore, no practical way to find out that information in any other way and certainly no substantial equivalent to it.

*Id.* at 270. Judge Facciola thus explicitly found that, even if Docs # 2, # 3, and # 5 revealed the mental processes of the OGC attorneys in this particular matter, Judicial Watch was still entitled to the documents.

Judge Facciola then addressed the issues of whether Doc # 6 is discoverable and what, if any, discovery should take place concerning the second FOIA search. With respect to the latter issue, Judge Facciola concluded that while this Court has prohibited general inquiries into the particulars of the second search, Judicial Watch should be permitted to ask "how a given aspect of the second search differed from the first" because it "may cast ... light on the integrity of the first" search. *Id.* at 271. Consistent with this finding, Judge Facciola declined to issue a protective order prohibiting Judicial Watch from inquiring into the second FOIA search.

As to the relevance of Doc # 6, Judge Facciola noted that he had already ruled during the Dolan deposition that the material was relevant to the instant matter and therefore should be produced. He concluded that the DOC had failed to appeal his ruling to this Court in a timely manner, and thus, did not preserve the right to resist producing the document. Accordingly, Judge Facciola ordered the DOC to provide Judicial Watch with Doc # 6.

## II. ANALYSIS

### A. *Standard of Review*

In reviewing a magistrate judge's ruling on a non-dispositive motion or other pretrial matter, the district court should only reverse the magistrate's order upon a showing that it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). A magistrate judge's ruling is clearly erroneous when, despite evidence to support the decision, the district court is convinced that based on the entire record a mistake has been committed. *Arakelian v. National Western Life Ins. Co.,* 126 F.R.D. 1, 2 (D.D.C.1989). The Court will apply this standard in reviewing Magistrate Judge Facciola's ruling on the defendant's motion for a protective order.

### B. *The Work Product Privilege*

The work product privilege, which was first recognized by the Supreme Court in *Hickman v. Taylor* and later codified in the Federal Rules of Civil Procedure, protects written material prepared by an attorney in anticipation of litigation or for trial. *In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998). The reason for protecting such documents from discovery is that "[i]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *see also In re Sealed Case,* 146 F.3d at 884 (finding that "[b]y ensuring that lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials, the privilege protects the adversary process.").

██ The work product privilege is not absolute. Fed.R.Civ.P. 26(b)(3). The Federal Rules of Civil Procedure explicitly provides that a party may obtain otherwise protected documents upon a showing that he "has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.* The rule also provides, however, that "[i]n ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.* The rule thus creates, as observed by the United States Court of Appeals for the D.C. Circuit, "in effect a two-tiered protection from discovery for attorney work product, in order to accommodate the liberal deposition-discovery policies of the Rules and the need to provide confidentiality for attorneys' files." *In re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir.1982). Therefore, work product that contains only non-privileged facts must be produced if the party seeking discovery can show a "substantial need" for the factual information contained therein and an inability to collect the same factual information without undue hardship. *Id.; Washington*

*Bancorporation v. Said,* 145 F.R.D. 274, 276 (D.D.C.1992). Work product that contains the opinions, judgments, and thought processes of an attorney, on the other hand, receives almost absolute protection from discovery and must be produced only if the party seeking the documents shows an "extraordinary justification" for production. *Said,* 145 F.R.D. at 276 (citing *In re Sealed Case,* 676 F.2d at 809).

### 1. *Documents # 2 and # 3*

■ The Court finds, based on the applicable law outlined above, that Judge Facciola's determination that Docs # 2 and # 3 are not protected by the work product privilege is neither clearly erroneous nor contrary to law. In reaching this conclusion, the Court relies exclusively on the second reason articulated by Judge Facciola for finding the documents discoverable in this case. That is, the Court will assume, for purposes of this opinion only, that the documents fall within the ambit of the work product privilege. Even assuming this fact, however, the Court finds no error in Judge Facciola's determination that Judicial Watch has demonstrated a sufficiently important need for the two documents and an inability to obtain the information contained therein to warrant ordering the DOC to produce them.

In a December 5, 2000 memorandum and order, this Court explicitly granted Judicial Watch leave to depose several DOC officials, including Brenda Dolan and Judith Means. By granting Judicial Watch leave to depose these individuals, the Court found that sufficient evidence had been presented to suggest that these officials possessed information relevant to the alleged misconduct by the DOC. This evidence was in addition to the finding by the Court nearly two years earlier that "DOC employees responsible for supervising and coordinating the document search were manipulating the search and withholding potentially damaging documents."

*Judicial Watch,* 34 F.Supp.2d at 36–37. Moreover, as Judge Facciola observed in his opinion on this matter, this Court has specifically ordered discovery on "the extent to which the DOC has illegally destroyed and discarded responsive information, and possible methods for recovering whatever responsive information still exists outside the DOC's possession." *Id.* at 41.

The Court finds, consistent with these earlier rulings, that it was not clearly erroneous for Judge Facciola to conclude that "[e]xploration of what the OGC and, in particular, Means, thought was an appropriate response to Stewart's claims of Means' misbehavior is the very exploration [this Court] insisted be conducted." *Judicial Watch,* 201 F.R.D. at 270. As stated several times throughout the course of this litigation, this case is not an ordinary FOIA action. It involves egregious misconduct by DOC officials in an attempt to withhold certain documents from production. Consequently, the Court has ordered that discovery take place aimed at finding out the extent of the misconduct and how to retrieve the documents that should have been given to Judicial Watch. As part of this discovery, the Court found it appropriate for Judicial Watch to depose not only Dolan, but also Means, who is an attorney for the DOC. Such a deposition certainly would not take place during the course of an ordinary FOIA request. Given this background, the Court finds no error with Judge Facciola's conclusion that if Means herself were asked during a deposition already authorized by this Court what OGC put in the draft it prepared for Dolan, the DOC would certainly assert the work product privilege. Thus, as Judge Facciola noted, there is "no practical way to find out that information in any other way and certainly no substantial equivalent to it." *Id.*

A final point worth mentioning concerns whether these two documents will reveal the mental processes of the attorneys working for and representing the DOC. Initially, the Court notes that it assumes, for purposes of this opinion only, that the documents would reveal such information. Even assuming this fact, however, the Court, as explained above, finds that Judicial Watch has made an extraordinary showing of need for the documents and an inability to otherwise obtain the information contained therein. The Court finds that it is also important to show why the cases cited by the DOC on this issue are inapposite to the instant case. *See, e.g., Director, Office of Thrift Supervision v. Vinson & Elkins,* 124 F.3d 1304, 1308 (D.C.Cir.1997) (finding that at some point "a lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the lawyer reveals his view of the case."); *Blumenthal v. Drudge,* 186 F.R.D. 236, 243 n. 8 (stating that "[b]ecause a draft of a legal document contains insights into the mental processes of defendant's attorney, and because plaintiffs have not shown a substantial need for the document, it is properly shielded from disclosure as attorney work product."). These cases are easily distinguishable from the instant matter because they did not involve the type of misconduct found by the Court to have taken place here. It is this misconduct by the DOC itself that has made both production of the documents and disclosure to Judicial Watch necessary.

Perhaps the best way of pointing out how different this case is from other actions is contrasting it with another case before Judge Facciola. In *Nesse v. Pittman,* Judge Facciola observed that "[s]ince drafts can so obviously reflect of a lawyer's mental processes, it is hardly surprising that they have been accorded work-product protection." *Nesse,* 202 F.R.D. 344, 351 (D.D.C.2001). While Judge Facciola did not determine whether the drafts at issue in that case were fact or opinion work product, he concluded that the documents were protected by the privilege. *Id.* In reaching that conclusion, he specifically rejected the notion that "the work-product privilege would yield whenever a plaintiff was smart enough to merely allege a 'cover-up'" *Id.* at 350. Unlike that case, the Court here has not only already determined that such misconduct has taken place by DOC officials, but also ordered discovery to take place on the issue and identified specific DOC officials that may have participated in the destruction or removal of documents that should have been provided to Judicial Watch. It is, as noted above, in this context that the Court finds that Judge Facciola's decision was not clearly erroneous or contrary to law. *Cf. Baker v. General Motors Corp.,* 209 F.3d 1051, 1054 (8th Cir.2000) (recognizing that even though opinion work product enjoys almost absolute immunity, it can be discovered in very rare and extraordinary circumstances, "such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.").

2. *Document # 5*

To the extent the Court finds no error in Judge Facciola's ruling regarding the documents created by OGC, it likewise finds that it was not erroneous for him to conclude that the material Dolan prepared by herself is discoverable. That is, Judicial Watch has a sufficiently important interest in obtaining this document to warrant the court ordering the DOC to produce it. Judicial Watch's need for this document is especially great considering Dolan's position at the DOC. Further, even if the Court had ruled differently with respect to Docs # 2 and # 3, the DOC has utterly failed to demonstrate how the production of document # 5 would reveal the mental processes of any DOC attorneys. This

document was created, as Judge Facciola pointed out, precisely because Dolan was not satisfied with the version of the declaration OGC. prepared. It also is not enough to say that Dolan made the declaration at the request of an attorney. That fact alone does not establish that the document would reveal the attorney's thought process or evaluation of the case. Thus, the DOC's work product claim is particularly weak with respect to this document and, as Judge Facciola concluded, it must be rejected.

### C. Discovery as to the Second FOIA Search

The Court does not have to go very far to affirm Judge Facciola's decision regarding the relevance of Doc # 6 and the ability of Judicial Watch to inquire about certain information pertaining to the second FOIA search conducted in this case. In another order issued this date, the Court has found that it is appropriate to set a cut-off date of 90 days for all discovery to be conducted in this case. In accordance with this decision, the Court has vacated the portions of it earlier rulings that limited discovery to the first FOIA search. Thus, Judicial Watch may now inquire into both the first and the second FOIA searches. The impact of the other order has made the DOC's objections to certain questions by Judicial Watch during the Dolan deposition moot as well as the DOC's argument that Doc # 6 is not within the scope of discovery. The Court feels it is important to point out, however, that even without vacating portions of its earlier orders, it would have little difficulty affirming Judge Facciola on these issues. The Court agrees with Judge Facciola that the answers the DOC provides to certain questions about the second FOIA search could be quite useful in determining the adequacy of the first search. Furthermore, based on the transcript of the Dolan deposition as well as Judge Facciola's opin-

ion, it appears that the DOC failed to appeal in a timely manner Judge Facciola's decision regarding the relevance of Doc # 6. Therefore, the DOC is precluded from doing so in the instant motion.

### III. CONCLUSION

In accordance with the foregoing findings and analysis, it is hereby ORDERED that the DOC's motion for reconsideration of Magistrate Judge Facciola's decision on the motion for a protective order [791] is DENIED.

SO ORDERED.